In re FOXMEYER CORPORATION; Foxmeyer Drug Company; Healthcare Transportation System, Inc.; Merchandise Coordinator Services Corporation; Foxmeyer Software, Inc.; and Healthmart, Inc., Debtors.

Bart A. Brown, Jr., as Chapter 7 Trustee, Plaintiff,

v.

General Electric Capital Corporation, the CIT Group/Business Credit, Inc., Bank America Business Credit, Inc., Heller Financial, Inc., La Salle Business Credit, Inc., Sanwa Business Credit Corp., the Bank of New York Commercial Corp., Corestates Bank, N.A., FSB Business Finance Corp., First National Bank of Boston, Nationsbank of Texas, N.A., BTM Capital Corp., Gibraltar Corp. of America, and National City Commercial Finance, Inc., Defendants.

Bankruptcy Nos. 96–1329(MBM) to 96–1334(MBM).
Adversary No. A97–34(MBM).

United States Bankruptcy Court, D. Delaware.

Nov. 19, 2002.

Howard W. Schub, David M. Friedman, Kasowitz, Benson, Torres & Friedman, LLP, New York City, Joseph Farnan, III, Phillips, Goldman & Spence, Wilmington, DE, for the Trustee.

Patrick A. Murphy, Michael K. Maly, San Francisco, CA, for G.E. Capital Corp.

David M. Schiffman, Sidley, Austin, Brown & Wood, Chicago, IL, for the remaining Defendants.

Erik Sobkiewicz, Pittsburgh, PA, for all of the Defendants.

## MEMORANDUM OPINION

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

Bart A. Brown, Jr., the Chapter 7 trustee (hereafter "the Trustee") of the above-captioned debtors (hereafter "the Debtors") and plaintiff herein, seeks in the instant adversary proceeding to avoid as either fraudulent or preferential the pre-petition incurrence of obligations and the pre-petition transfer of liens by FoxMeyer Drug Company (hereafter "Fox Drug"), one of the Debtors, to General Electric Capital Corporation (hereafter "GECC") and a syndicate of other financial institutions for whom GECC acted as agent (hereafter "the Non–GECC Lenders"). The Trustee seeks to recover the value of such liens and/or any amounts paid on account of such liens and such obligations from GECC and the Non–GECC Lenders, each of whom is accordingly named as a defendant in the instant adversary proceeding (hereafter also referred to collectively as "the Defendants").

GECC has previously moved for summary judgment with respect to the entirety of the Trustee's first amended adversary complaint (hereafter "the Trustee's Complaint"), which motion was denied with respect to all of the counts in the Trustee's Complaint save for the tenth count therein, for which count, which pleads a cause of action for equitable subordination pursuant to 11 U.S.C. § 510(c), summary judgment was granted in favor of GECC. See Judgment and Order, dat. Nov. 12, 1998, at p. 5 ¶ 14. Because the Court, in granting summary judgment to GECC on the Trustee's Count 10, ruled that the Trustee's equitable subordination claim that comprises such count is dismissed, see Id., the Court now rules that such grant of partial summary judgment extends to not only the movant who received such partial

summary judgment—ie., GECC—but also to the Non–GECC Lenders. GECC and the Non–GECC Lenders now both move, via separate motions, for summary judgment with respect to the nine counts in the Trustee's Complaint which withstood GECC's prior summary judgment motion.

In Counts 1 and 2 of the Trustee's Complaint, the Trustee pleads claims for actual and constructive fraudulent conveyance under, respectively, 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B). In Counts 3 through 5 of the Trustee's Complaint, the Trustee sets forth claims for actual fraudulent conveyance under, respectively, Texas, Delaware, and New York state law. Counts 6 through 8 of the Trustee's Complaint set forth claims for constructive fraudulent conveyance under, respectively, Delaware, Texas, and New York state law. The Trustee pursues his state law fraudulent conveyance claims in bankruptcy pursuant to 11 U.S.C. § 544(b)(1). In Count 9 of the Trustee's Complaint, the Trustee pleads a claim for preferential transfer under 11 U.S.C. § 547. At the August 15, 2002 hearing on the present summary judgment motions of GECC and the Non–GECC Lenders, the parties orally stipulated that, with respect to the Trustee's state law fraudulent conveyance claims (ie., the Trustee's Counts 3 through 8), New York state law shall apply; therefore, with respect to Counts 3, 4, 6, and 7 of the Trustee's Complaint, the Trustee is deemed to have stipulated to the dismissal of the same and such counts are hereby dismissed. Therefore, Counts 1, 2, 5, 8, and 9 of the Trustee's Complaint remain outstanding for disposition by the Court.

For the reasons set forth below, the Court (a) shall grant the summary judgment motions of GECC and the Non–GECC Lenders with respect to the entirety of the Trustee's Count 9, and (b) shall deny such summary judgment motions with respect to the Trustee's Counts 1, 2, 5, and 8.

### STATEMENT OF FACTS

On June 19, 1996, Fox Drug and the rest of the Debtors entered into a credit facility agreement (hereafter "the Credit Agreement") with GECC and the Non–GECC Lenders. *See* Defs.' Stmt. Undisputed Facts[1] ¶ 8; Trustee's Resp.[2] ¶ 8. Fox Drug's capacity under the Credit Agreement was as borrower while the rest of the Debtors acted as guarantors. *See* Trustee's Resp. ¶ 8. Also on June 19, 1996, Fox Drug and FoxMeyer Funding, Inc., a non-debtor subsidiary of Fox Drug (FoxMeyer Funding, Inc. and Fox Drug are hereafter collectively referred to as "Fox Drug"), entered into an agreement with GECC and Redwood Receivables Corporation, a subsidiary of GECC (Redwood Receivables Corporation and GECC are hereafter collectively referred to as GECC), wherein GECC agreed to purchase accounts receivable of Fox Drug (hereafter "the Receivables Purchase Agreement"). *See* Defs.' Stmt. Undisputed Facts ¶ 8; Trustee's Resp. ¶ 8.

By virtue of the Credit Agreement, GECC and the Non–GECC Lenders agreed to provide Fox Drug, as the borrower thereunder, with up to $475 million in a revolving credit facility. *See* Defs.' Stmt. Undisputed Facts ¶ 9; Trustee's

---

**1.** The Court will refer to the "Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56" as "Defs.' Stmt. Undisputed Facts." Defs.' Stmt. Undisputed Facts was filed by GECC.

**2.** The Court will refer to the "Chapter 7 Trustee's Response to General Electric Capital Corporation's Separate Statement of Undisputed Facts" as "Trustee's Resp."

Resp. ¶ 9. By virtue of the Receivables Purchase Agreement, GECC provided Fox Drug with up to $275 million in off-balance sheet financing. *See* Defs.' Stmt. Undisputed Facts ¶ 10; Trustee's Resp. ¶ 10. The Trustee takes the position that such $475 million in credit and such $275 million in off-balance sheet financing was made available not only to Fox Drug but to all of the Debtors, *see* Trustee's Resp. ¶¶ 9 & 10, which position the Court can only presume the Trustee takes by virtue of (a) the fact that the rest of the Debtors served as guarantors under the Credit Agreement, and (b) the Trustee's contention that the rest of the Debtors should legally be viewed with Fox Drug as but one entity, *see* Trustee's Resp. ¶ 48. Despite the preceding position of the Trustee, the Trustee does not dispute that (a) Fox Drug was named as borrower in the Credit Agreement, *see* Trustee's Resp. ¶ 8, (b) Fox Drug was the sole recipient of $300,270,016 (hereafter "$300 million") in funds that GECC and the Non–GECC Lenders advanced on June 19, 1996, pursuant to the Credit Agreement, see Defs.' Stmt. Undisputed Facts ¶ 12; Trustee's Resp. ¶ 12, and (c) Fox Drug was the sole recipient of $275 million in funds that GECC paid on June 19, 1996, pursuant to the Receivables Purchase Agreement. *See* Defs.' Stmt. Undisputed Facts ¶ 13; Trustee's Resp. ¶ 13. The sum of such funds so received by Fox Drug, which sum is hereafter referred to as the "Loan Proceeds," equals $575,270,016 (hereafter "$575 million").

Fox Drug granted to GECC and the Non–GECC Lenders a security interest in inventory and certain other property of Fox Drug to secure the advances of credit made to, as well as other obligations of, Fox Drug pursuant to the Credit Agreement, which security interest was perfected on June 19, 1996. *See* Defs.' Stmt. Undisputed Facts ¶ 11; Trustee's Resp. ¶ 11. GECC also obtained from Fox Drug a security interest in the accounts receivable that Fox Drug sold to GECC pursuant to the Receivables Purchase Agreement (hereafter "the Sold Receivables"), which security interest GECC obtained either (a) necessarily in the event that such receivables actually are found to have been sold given "that [a] 'security interest' includes any interest of a 'buyer of accounts ... which is subject to Article 9,'" 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 30–9 at 65 (4th ed.1995) (quoting from § 1–201(37) of the Uniform Commercial Code), or (b) by virtue of § 8.01 of the Receivables Purchase Agreement in the event that such receivables actually are found not to have been sold pursuant to such agreement, *see* Ex. C to Grady Schleier Decl. (Receivables Purchase Agreement, § 8.01). The Trustee has never contended that GECC's security interest in the Sold Receivables was not properly and timely perfected and, thus, the Court shall find that such perfection occurred. The Trustee asserts that GECC and the Non–GECC Lenders, by virtue of the security interests just described (hereafter "the Security Interests"), were fully secured at all times with respect to the Loan Proceeds that were advanced to Fox Drug under the Credit Agreement and the Receivables Purchase Agreement. *See* Trustee's Complaint ¶ 54 (GECC and the Non–GECC Lenders had "a no-risk, over-secured facility"); *see also* Trustee's Resp. ¶ 36 (same).

The Trustee takes the position that one of the obligations of Fox Drug that was secured by the Security Interests was the concurrent consummation on June 19, 1996, of a dividend of assets (hereafter "the Dividend") from Fox Drug and Fox-Meyer Corporation (hereafter "Fox Corp."), the parent company of Fox Drug and also one of the Debtors, to FoxMeyer Health Corporation (now known, and here-

after referred to, as "Avatex"), which entity, in turn, was the parent of Fox Corp. *See* Trustee's Resp. ¶ 11. The Dividend was, in fact, effected on June 19, 1996. *See* Defs.' Stmt. Undisputed Facts ¶ 46; Trustee's Resp. ¶ 46. As well, such concurrent consummation of the Dividend was, in fact, a condition to, *inter alia*, the incurrence by GECC and the Non–GECC Lenders of their obligation pursuant to the Credit Agreement to advance the $300 million in Loan Proceeds that Fox Drug ultimately obtained thereby on June 19, 1996. *See* Defs.' Stmt. Undisputed Facts ¶ 53; Trustee's Resp. ¶ 53; Ex. B to Grady Schleier Decl. (Credit Agreement, § 2.1(m)(i)). The Trustee values the entirety of the assets that were transferred to Avatex via the Dividend at approximately $198 million (hereafter "$198 million"). *See* Trustee's Complaint ¶ 55. All of the assets that were the subject of the Dividend constituted, at least formally, property of Fox Corp. as of June 19, 1996, save for roughly $7 million—$8 million (hereafter "$8 million") worth of restricted securities in PharMor, Inc.,[3] which securities constituted, at least formally, property of Fox Drug as of June 19, 1996. *See* Defs.' Stmt. Undisputed Facts ¶ 48; Trustee's Resp. ¶ 48. The Trustee argues that, notwithstanding that all of the dividended assets formally constituted property of Fox Corp. as of June 19, 1996, save for the PharMor securities, such assets "were, for all practical and business purposes ..., ... also taken from Fox[ ]Drug." *See* Trustee's Resp. ¶ 48. The Trustee takes the preceding position because, and as set forth earlier herein, the Trustee also takes the position that Fox Drug and Fox Corp., not to mention the rest of the Debtors, should legally be viewed as but one entity. *See Id.* None of

the assets that were transferred by Fox Corp. via the Dividend constituted cash. *See* Defs.' Stmt. Undisputed Facts ¶ 46; Trustee's Resp. ¶ 46. However, the Trustee argues that, even though not cash, many of the assets transferred by Fox Corp. via the Dividend were readily convertible and, in fact, were quickly converted by Avatex subsequent to the Dividend, into cash. *See* Trustee's Resp. ¶ 46. Because none of the assets transferred via the Dividend constituted cash, the parties agree that none of the Loan Proceeds were formally included in the Dividend. *See* Defs.' Stmt. Undisputed Facts ¶ 47; Trustee's Resp. ¶ 47. Despite the preceding concession by the Trustee, the Trustee argues that $198 million of the Loan Proceeds were nevertheless used to fund the Dividend to Avatex. *See* Trustee's Resp. ¶ 47. To the extent that the Trustee so argues, he does so because, according to the Trustee, (a) the assets transferred to Avatex via the Dividend constituted cash equivalents, and (b) $198 million of the Loan Proceeds were used to replace such cash equivalents. *See* Trustee's Resp. ¶¶ 46 & 47.

GECC and the Non–GECC Lenders contend, and the Trustee concedes, that (a) the Credit Agreement and the Receivables Purchase Agreement required, also as a condition to the advance of the Loan Proceeds, that the Loan Proceeds be utilized by Fox Drug concurrently to make the following payments, and (b) Fox Drug, in fact, made the following payments on June 19, 1996:

(a) $200,534,675 to repay outstanding principal and accrued interest on unsecured 7.09% senior notes (hereafter "the Senior Notes") which were held

---

**3.** An open issue remains as to the precise fair market value of the PharMor, Inc. securities on June 19, 1996, the date of the Dividend.

The Court shall, for the sake of convenience with respect to the instant opinion, refer to the value of such securities as $8 million.

by a group of insurance companies (hereafter "the Noteholders"), which notes were issued by Fox Corp. on April 29, 1993 but for which Fox Drug was also liable;

(b) $169,335,772 to repay outstanding principal, accrued interest and fees on an unsecured revolving credit facility that was provided by a group of lenders for which Citicorp USA, Inc. acted as agent (hereafter "the Citicorp Lenders" and "the Citicorp Debt"), for which obligation Fox Drug was liable;

(c) $201,474,569 (hereafter "$201.5 million") to repurchase accounts receivable of Fox Drug which it had sold to Citibank, N.A. and NationsBank of North Carolina, N.A. (hereafter "the Citicorp Lenders") pursuant to a Trade Receivables Purchase and Sale Agreement (hereafter "the Citicorp Debt"); and

(d) $3,925,000 (hereafter "$4 million") to pay fees, expenses, and closing costs related to the financing which Fox Drug obtained via the Credit Agreement and the Receivables Purchase Agreement.

See Defs.' Stmt. Undisputed Facts ¶¶ 14–17; Trustee's Resp. ¶¶ 14–17; see also Ex. B to Grady Schleier Decl. (Credit Agreement, §§ 1.4(a) & 2.1(c) (such condition set forth)). The sum of such payments equals $575,270,016 (hereafter "$575 million"). The Trustee's concessions as to such condition regarding usage of, as well as the actual use of, the Loan Proceeds notwithstanding, the Trustee nevertheless maintains, as is set forth above, that $198 million of the Loan Proceeds were used to fund the Dividend to Avatex. See Trustee's Resp. ¶¶ 14–16.

The Trustee contends that (a) Avatex sought to effect the Dividend prior to June 19, 1996, (b) the Citicorp Lenders and the Noteholders, by virtue of language in the Citicorp Debt agreements and the Senior Notes, could and did preclude Fox Drug and Fox Corp. from so effecting the Dividend, (c) Avatex forced the Debtors to enter into the financing arrangements with GECC and the Non–GECC Lenders, and (d) Avatex did so for the sole purpose of satisfying the Citicorp Debt and the Senior Notes so that the Dividend could then ultimately be effected. See Trustee's Complaint ¶¶ 21–28 & 34. The agreements for the Citicorp Debt and the Senior Notes, in fact, contained covenants that effectively precluded the effectuation of the Dividend. See Trustee's Ex's. 4 & 5, att. to David Friedman Decl. (Citicorp Debt agmt., ¶ 6.2(j) & Senior Notes agmt., § 5.8). The Trustee also contends, cites to exhibits that evidence, and GECC and the Non–GECC Lenders do not dispute, that the Citicorp Lenders desired, prior to June 19, 1996, that the Debtors obtain alternative financing so that the Debtors could, in turn, then pay off the Citicorp Debt and the Senior Notes. See Trustee's Mem. of Law, dat. 5/7/02, at pp. 18–19 (citing to Trustee's Ex's. 34 & 41, att. to Friedman Decl.).

The agreements for the Citicorp Debt and the Senior Notes also contained covenants that precluded the Debtors from obtaining any financing from, and/or transferring liens on their property to, anyone such as GECC and the Non–GECC Lenders via vehicles such as, for instance, the Credit Agreement and the Receivables Purchase Agreement while the Debtors remained obligated with respect to the Citicorp Debt and the Senior Notes. See Trustee's Ex's. 4 & 5, att. to Friedman Decl. (Citicorp Debt agmt., ¶¶ 6.2(a) (precludes new debt), 6.2(n) (precludes sale of, or lien upon, assets), 6.2(e) (minimum net worth requirement of roughly $465 million), 6.2(i) (total debt to capitalization ratio must be less than 0.4 to 1.0) & Senior

Notes agmt., §§ 5.6 (limitation on debt), 5.7 (limitation on liens)). As one would expect, each such agreement also contained language (a) to the effect that a failure by the Debtors to observe or perform any of the covenants to which are just referred constituted a default under each such agreement, *see* Trustee's Ex's. 4 & 5, att. to Friedman Decl. (Citicorp Debt agmt., ¶ 7.1(b) & Senior Notes agmt., § 6.1(f)), and (b) granting to the Citicorp Lenders and the Senior Noteholders remedies in case of such a default, *see* Trustee's Ex's. 4 & 5, att. to Friedman Decl. (Citicorp Debt agmt., ¶ 7.3(a) & Senior Notes agmt., § 6.3).

Each of the Debtors filed a voluntary petition in bankruptcy in this Court on August 27, 1996, under Chapter 11 of the Bankruptcy Code. Each Chapter 11 case was subsequently converted to one under Chapter 7 of the Bankruptcy Code on March 18, 1997. On November 8, 1996, the assets which were collateralized via the Security Interests were sold off for approximately $600 million, which funds were then used to satisfy the outstanding balance then due to GECC and the Non–GECC Lenders under the Credit Agreement and the Receivables Purchase Agreement.

## DISCUSSION

### I. *Summary Judgment Standard.*

The law regarding summary judgment adjudication in the Third Circuit, at least after the U.S. Supreme Court's decision in *Celotex Corp. v. Catrett,* is succinctly explained as follows:

> On a summary judgment motion, the movant must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Once the movant satisfies this initial burden, then the non-movant must respond with information to the contrary or it will lose. Fed. R.Civ.P. 56(e).
>
> ... Where the movant is the defendant, or the party without the burden on the underlying claim, the movant[, in order to satisfy its initial burden of demonstrating the lack of a genuine factual dispute,] has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).
>
> Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent. The Third Circuit has stated that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3rd Cir.1992).

*National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1581–1582 (3rd Cir. 1992); *see also Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3rd Cir. 1996) (" '[i]f ... there is any evidence in the record from any source from which a reasonable inference in the [[non]moving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment....' "); *Singletary v. Pennsylvania Department of Corrections,* 266 F.3d 186, 201 n. 2 (3rd Cir.2001) (" 'the burden on the moving party [for summary judgment] may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the non-

moving party bears the ultimate burden of proof").

Any evidence that the movant presents in an attempt to carry its initial summary judgment burden "must be viewed in the light most favorable to the non-moving party." *National State Bank*, 979 F.2d at 1581 (citing *O'Donnell v. United States*, 891 F.2d 1079, 1081–82 (3rd Cir.1989)); *see also* Judgment and Order, dat. Nov. 12, 1998, at p. 2 ¶ 3. However, with respect to factual issues, the same are " 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hankins v. Temple University*, 829 F.2d 437, 440 (3rd Cir. 1987). Therefore, a nonmoving party who bears the burden of proof at trial with respect to a claim or defense cannot establish the presence of a genuine factual dispute merely by producing, and then arguing that it has produced, some evidence that would support its version of a fact but, rather, in order to establish such factual dispute, must produce evidence in such support of a weight that would be sufficient such that a reasonable jury could return a verdict for such nonmovant on such fact. As well, a nonmoving party, whether or not it bears the burden of proof at trial with respect to a claim or defense, cannot withstand a summary judgment motion on the basis that a genuine factual dispute exists if the evidence on the record is such that a reasonable jury could only return a verdict in favor of the movant with respect to such fact.

Finally, "when the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed." 10A Charles A. Wright, et al., *Federal Practice & Procedure* § 2725 (3rd ed.2002). Therefore, genuine disputes as to ultimate questions of fact—that is, mixed questions of fact and law which require for their resolution a legal conclu-

sion to be drawn from facts already established—are normally treated, for purposes of a summary judgment motion under Rule 56, as are other genuine legal disputes, which is to say that the existence of such disputes shall not preclude the entry of a summary judgment.

## II. *Law of the Case Doctrine.*

In addition to defending against the substance of the summary judgment motions of GECC and the Non–GECC Lenders, the Trustee argues that the Court's denial of GECC's prior summary judgment motion as it related to the counts of the Trustee's Complaint that remain for decision constitutes law of the case, thereby barring GECC and the Non–GECC Lenders from once again moving for summary judgment with respect to such remaining counts.

■■■ "Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. . . . As rules that govern within a single action, they do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 (2nd ed.2002); *see also Bonnie & Company Fashions, Inc. v. Bankers Trust Co.*, 955 F.Supp. 203, 209 (S.D.N.Y.1997) (same, citing Wright, et al.); *C.W. Over & Sons, Inc. v. United States*, 48 Fed.Cl. 342, 347 (Fed.Cl.2000) (same). "It is important to note that law of the case rules 'come[ ] into play only with respect to issues previously determined,' . . . and that 'questions that have not been decided do not become law of the case merely because they could have been decided.' " *Bonnie & Co.*, 955 F.Supp. at 209; *see also In re Philip Services (Delaware), Inc.*, 267 B.R. 62, 66 (Bankr.D.Del. 2001) (same); 18B Charles A. Wright, Ar-

thur R. Miller & Edward H. Cooper, *supra* p. 15, at § 4478 ("As compared to claim preclusion, it is not enough that the matter could have been decided in earlier proceedings").

■ The Trustee argues that a denial of a summary judgment motion is considered law of the case, and cites in support of such argument 11 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 56.10[7] (3rd ed.1998), and *In re Brand Name Prescription Drugs Antitrust Litigation,* 2000 WL 204061 at *2 (N.D.Ill.2000) ("Absent a compelling reason, district courts should not change their summary judgment rulings"). However, ample case authority exists for the precisely contrary position that denial of a summary judgment motion does not constitute law of the case. *See Paquin v. Federal National Mortgage Association,* 20 F.Supp.2d 94, 96 (D.D.C.1998); *Dessar v. Bank of America National Trust and Savings Association,* 353 F.2d 468, 470 (9th Cir.1965); *Kovacevich v. Kent State University,* 224 F.3d 806, 835 (6th Cir. 2000) (concurring opinion); *C.W. Over,* 48 Fed.Cl. at 347; *Bethlehem Steel Export Corp. v. Redondo Construction Corp.,* 140 F.3d 319, 321 (1st Cir.1998). Reconciling the preceding conflicting authorities, this Court holds, as a matter of law, that a denial of a summary judgment motion constitutes law of the case but only with respect to the substance of that which is actually decided, which substance typically amounts—as is the case with respect to the Court's denial of GECC's prior summary judgment motion as it relates to the Trustee's Counts 1, 2, 5, 8, and 9—to nothing more than that a genuine dispute exists with respect to a particular fact, that such fact is material to a resolution of the claim in question, and/or that a legal issue cannot be resolved until more facts are determined. *See* 10A Charles A. Wright, et al., *Federal Practice & Procedure* § 2712 (3rd ed.2002) ("a denial of summary judgment is not a decision on the merits;

it simply is a decision that there is a material factual issue to be tried"). Therefore, if a court, within its ruling that disposes of a prior summary judgment motion, fails entirely to address a legal theory which might provide a basis presently for the grant of summary judgment, then such prior ruling would not, by virtue of the law of the case doctrine, preclude that court from entertaining such legal theory within the context of a subsequent summary judgment motion unless such legal theory would necessarily depend for its success on (a) the existence of material facts that the court has previously found to be subject to a genuine dispute, and/or (b) the outcome of legal issues that the court has previously determined it cannot yet resolve.

■ Furthermore, a court may depart from the law of the case, even if such doctrine is applicable, if proper circumstances present themselves, such as when (a) a new event occurs that might affect the outcome of an issue, (b) an issue is raised that justifiably was not seen at an earlier time, or (c) a new issue is injected by a proper amendment of the pleadings. *See* 18B Wright, et al., *supra* p. 15, at § 4478; *see also Bonnie & Co.,* 955 F.Supp. at 209 (law of the case rules "do not, however, limit a court's ability to reconsider an issue if the court deems such reconsideration appropriate"). Indeed, the authorities cited by the Trustee even recognize that a court may depart from the law of the case, particularly if, *inter alia,* new evidence becomes available or a factual record is expanded via discovery. *See Curran v. Kwon,* 153 F.3d 481, 487 n. 11 (7th Cir.1998) (citing *Moore's Federal Practice* for such proposition); *Brand Name,* 2000 WL 204061 at *2 (same).

## III. *The Trustee's Count 9—Preferential Transfer Claim.*

The Trustee contends that (a) Fox Drug's transfer of the Security Interests

to GECC and the Non–GECC Lenders may be avoided as a preferential transfer under 11 U.S.C. § 547(b), and (b) he may recover the value of the Security Interests or the amounts paid on account of the Security Interests from GECC and the Non–GECC Lenders pursuant to 11 U.S.C. § 550(a)(1). The Trustee argues that such transfer of the Security Interests is preferential and, thus, avoidable under § 547(b) because, according to the Trustee, such transfer (a) was made for the benefit of, among others, the Citicorp Lenders and the Noteholders, thus satisfying § 547(b)(1), (b) was made on account of antecedent debt that Fox Drug owed to the Citicorp Lenders and the Noteholders, namely the Citicorp Debt and the Senior Notes, thus satisfying § 547(b)(2), (c) was made while Fox Drug was insolvent, thus satisfying § 547(b)(3), (d) was made within the 90–day period preceding Fox Drug's August 27, 1996 bankruptcy filing, thus satisfying § 547(b)(4), and (e) allowed the Citicorp Lenders and the Noteholders to be paid in full on the Citicorp Debt and the Senior Notes, which payment is more than they would have been paid in a Chapter 7 liquidation if such transfer had not occurred, thus satisfying § 547(b)(5). The Trustee argues further that, if he is successful in so avoiding as preferential the transfer of the Security Interests, then he may recover the value of the Security Interests from GECC and the Non–GECC Lenders despite the fact that the transfer of the Security Interests, if avoidable as a preference, is preferential with respect to the Citicorp Lenders and the Noteholders rather than with respect to GECC and the Non–GECC Lenders; the Trustee argues as much because (a) GECC and the Non–GECC Lenders were the initial transferees of the Security Interests, and (b) a bankruptcy trustee may, pursuant to 11

U.S.C. § 550(a)(1), recover the value of property found to have been preferentially transferred from the initial transferee of such property, see 11 U.S.C.A. § 550(a)(1) (West 1993).

GECC defends against the Trustee's preference claim by, *inter alia*, (a) apparently arguing that Fox Drug's transfer of the Security Interests was not made for the benefit of, or on account of antecedent debt owed to, the Citicorp Lenders and the Noteholders, at least within the meaning of § 547(b)(1) & (2), and that such lien transfer was consequently not really a preferential transfer, and (b) arguing that the "new value" exception to the preference rule, which exception is set forth in § 547(c)(1), applies so as to insulate from avoidance under § 547(b) such transfer of the Security Interests. The Non–GECC Lenders, in their summary judgment motion, accept *arguendo* that the Trustee can prove his *prima facie* case for preference under § 547(b), including, *inter alia*, that Fox Drug's transfer of the Security Interests was made for the benefit of, and on account of antecedent debt owed to, the Citicorp Lenders and the Noteholders within the meaning of § 547(b)(1) & (2). However, the Non–GECC Lenders argue that they and GECC are nevertheless entitled to summary judgment with respect to the Trustee's preference claim because, according to the Non–GECC Lenders, the "new value" and the "inventory and receivables" exceptions to the preference rule, which exceptions are set forth respectively in §§ 547(c)(1) and 547(c)(5), apply so as to insulate from avoidance under § 547(b) Fox Drug's transfer of the Security Interests to GECC and the Non–GECC Lenders.

**A. *Law of the Case and Waiver of Defenses with Respect to the Trustee's Preference Claim.***

██ As an initial matter, the Trustee argues that the Court's November 12, 1998

denial of GECC's prior summary judgment motion as it related to the Trustee's preference claim constitutes law of the case, thereby barring GECC and the Non–GECC Lenders from once again moving for summary judgment with respect to such claim. The Court is somewhat inclined to accept such law of the case argument by the Trustee to the extent that GECC and the Non–GECC Lenders continue to seek summary judgment with respect to the Trustee's preference claim on the ground that certain elements of the Trustee's *prima facie* case for preference under § 547(b) cannot be proven. Such inclination by the Court arises notwithstanding the expansion of the record due to substantial discovery by the parties that occurred subsequent to November 12, 1998, because such expansion arguably has done nothing to change the landscape with respect to the Trustee's *prima facie* case for preference under § 547(b). However, the Court must reject such law of the case argument by the Trustee to the extent that GECC and the Non–GECC Lenders now seek summary judgment vis-a-vis the Trustee's preference claim on the ground that the "new value" and the "inventory and receivables" exceptions to the preference rule contained in §§ 547(c)(1) and 547(c)(5) apply so as to insulate from avoidance under § 547(b) Fox Drug's transfer of the Security Interests to GECC and the Non–GECC Lenders. The Court must rule as it does for several reasons.

First, and as is evidenced by an examination of paragraph 12 of the Court's November 12, 1998 Judgment and Order, which paragraph constitutes the only previous analysis by the Court of the Trustee's preference claim, the Court has never addressed in any fashion the preference defenses by GECC and the Non–GECC Lenders predicated upon §§ 547(c)(1) and 547(c)(5). Because the Court has never addressed defenses under §§ 547(c)(1) &

547(c)(5), the Court's November 12, 1998 ruling cannot constitute law of the case with respect to such preference defenses unless their success is necessarily dependent on (a) the existence of material facts that the Court has previously found to be subject to a genuine dispute, and/or (b) the outcome of legal issues that the Court has previously determined it cannot yet resolve. *See supra* p. 557. The Court finds that the success of such defenses is not dependent upon any such factual or legal dispute save for a dispute regarding whether, and to what extent, Fox Drug received new value in exchange for its transfer of the Security Interests, *see* Judgment and Order, dat. Nov. 12, 1998, at p. 4 ¶¶ 8 & 9, which dispute affects the success of a defense under § 547(c)(1). However, and unfortunately for the Trustee, the prior existence of a dispute as to such "new value" will not serve to preclude the Court, by virtue of the law of the case doctrine, from addressing at this time a § 547(c)(1) defense. The Court holds as it does because (a) such dispute as to "new value" can be reduced solely to a dispute regarding whether the Court should integrate all of the various transactions that the Debtors entered into on June 19, 1996, and which have thus far been discussed herein (hereafter "the June 19, 1996 Transactions"), which latter issue—an ultimate question of fact—the Court previously ruled, as of November 12, 1998, that it could not yet resolve, (b) the Court now concludes that the "new value" issue can be decided irrespective of whether the June 19, 1996 Transactions should be integrated, *see infra* p. 564, and (c) the Court has never addressed in any fashion whether the "new value" issue can be decided irrespective of the integration issue. Because the issue of "new value" can now be resolved, and since, as the Court finds, the §§ 547(c)(1) and 547(c)(5) defenses can be

addressed at this time without first resolving any other factual or legal dispute that the Court has previously identified, such defenses may be addressed by the Court without any concern that their present consideration is barred by application of the law of the case doctrine. The Court also notes that it matters not, for purposes of a law of the case analysis, that the preference defenses under §§ 547(c)(1) and 547(c)(5) could have been raised and/or decided in the Court's November 12, 1998 ruling—it only matters, for purposes of such analysis, that such defenses were not addressed by the Court at that time. *See supra* p. 556.

Second, an exception to the law of the case doctrine applies with respect to the preference defense under § 547(c)(5) in particular, namely that such defense, which was never raised by GECC or the Non–GECC Lenders at the time of, or prior to, the Court's November 12, 1998 ruling, has now been interposed by way of a proper amendment of the Defendants' answers. Because of the applicability of such exception to the law of the case doctrine, the Court's November 12, 1998 ruling, even to the extent that it constitutes law of the case with respect to a § 547(c)(5) defense, shall not bar the Court's present consideration of such defense.

■ The Trustee also argues that GECC and the Non–GECC Lenders waived their § 547(c)(5) defense (a) because such defense was not pled in any of the Defendants' answers, and (b) since, according to the Trustee, the Defendants can no longer amend their answers to plead such defense. Although it is true that none of the Defendants had formally pled a § 547(c)(5) defense prior to the August 15, 2002 hearing before the Court, the Court, at such hearing, orally rejected the argument by the Trustee that the De-

fendants' answers could no longer be amended to plead such defense. The Court is cognizant of the case authorities that the Trustee cites in support of his aforesaid objection to amendment of the pleadings. However, and unfortunately for the Trustee, such case authorities conflict with binding Third Circuit precedent, not to mention other persuasive precedent, that serves to allow the Defendants' amendment of their answers at this stage of the instant proceeding so that the same plead a § 547(c)(5) defense. *See Adams v. Gould Inc.,* 739 F.2d 858, 868–869 (3rd Cir.1984) ("Where the legal theory of a complaint is rejected by the district court on a motion for summary judgment, but where an alternative theory has been raised [prior to such ruling] which, on the same facts, is legally sufficient, it would be unusual for a district court not to allow the plaintiff leave to amend because of 'undue delay' "); *Eddy v. Virgin Islands Water and Power Authority,* 256 F.3d 204, 209–210 (3rd Cir.2001) (a defense is not waived and an amendment of pleadings is not untimely if such defense is raised for the first time in a summary judgment motion and such amendment is deemed to, or would, occur simultaneously or shortly thereafter); *DRR, L.L.C. v. Sears, Roebuck and Co.,* 171 F.R.D. 162, 168 (D.Del. 1997) (a pleading amendment does not unduly prejudice an opposing party such that it should be denied if the content of said amendment is offered for the first time prior to the granting of summary judgment or other adjudication on the merits). Therefore, the Court orally directed GECC and the Non–GECC Lenders to orally move at the August 15, 2002 hearing to accordingly amend their answers, which oral motion was (a) then made and orally granted by the Court forthwith at such hearing, and (b) followed, the Court presumes, by a filing by GECC and the Non–GECC Lenders of a written amendment of

their answers so as to plead a defense under § 547(c)(5).

In light of the foregoing, the preference defenses of GECC and the Non–GECC Lenders under §§ 547(c)(1) and 547(c)(5) may be raised by the Defendants and dealt with by the Court within the context of the instant summary judgment motions. Because the Court finds that GECC and the Non–GECC Lenders, on the basis of such defenses, are entitled to summary judgment with respect to the Trustee's preference claim, the Court need not consider further whether the Trustee can prevail on his *prima facie* case for preference under § 547(b).

### B. *Summary Judgment Standard with Respect to the §§ 547(c)(1) and 547(c)(5) Defenses.*

GECC and the Non–GECC Lenders have the burden of proof on their defenses under §§ 547(c)(1) and 547(c)(5). *See* 11 U.S.C.A. § 547(g) (West 1993). Consequently, GECC and the Non–GECC Lenders, as summary judgment movants, cannot presently demonstrate the lack of a genuine material factual dispute merely if it turns out to be the case, and GECC and the Non–GECC Lenders point out to the Court, that the Trustee has failed to present evidentiary matter with respect to such factual issue. *See supra* p. 555. However, at the same time, a genuine factual dispute does not exist, and the Trustee thus cannot withstand summary judgment on the basis that a genuine factual dispute exists, if the evidence on the record is such that a reasonable jury could only return a verdict in favor of GECC and the Non–GECC Lenders with respect to such fact.

### C. *"New Value" Exception to the Preference Rule under § 547(c)(1).*

11 U.S.C. § 547(c)(1) provides that:

[t]he trustee may not avoid under … section [547(b)] a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C.A. § 547(c)(1) (West 1993).

The Trustee contends that § 547(c)(1) is inapplicable to Fox Drug's transfer of the Security Interests to GECC and the Non–GECC Lenders for several reasons. First, argues the Trustee, Fox Drug—actually, the Trustee contends, the combined Debtors—did not receive new value in exchange for the transfer of the Security Interests because, argues the Trustee in turn, the Security Interests were worth $575 million whereas the combined Debtors only received $377 million of new value in exchange therefor. The Trustee contends that the combined Debtors only received $377 million of such new value because, according to the Trustee, (a) the June 19, 1996 Transactions—including, *inter alia*, the Dividend to Avatex—must be integrated such that they constituted but one large transaction, and (b) such new value received by the combined Debtors consequently must be calculated by subtracting the $198 million in property that was transferred to Avatex via the Dividend from the $575 million in Loan Proceeds that was received by the combined Debtors. Second, argues the Trustee in the alternative, which argument the Trustee made for the first time orally at the August 15, 2002 hearing, the combined Debtors did not receive, in exchange for the Security Interests, any new value within the meaning of § 547(a)(2) and, thus, § 547(c)(1), because, argues the Trustee,

the only thing that the combined Debtors so received was the substitution of one obligation for an existing obligation, which substitution does not constitute such "new value." Finally, the Trustee maintains that, when assessing, under § 547(c)(1)(A), whether there existed an intent that the transfer of the Security Interests be part of a contemporaneous exchange for new value given to the combined Debtors, the relevant intent to be ascertained is that of the Citicorp Lenders and the Noteholders rather than GECC and the Non–GECC Lenders; the Trustee maintains further that no evidence has been introduced thus far as to whether the Citicorp Lenders and the Noteholders intended for such transfers to and from the combined Debtors to be made as part of a contemporaneous exchange. For the reasons set forth below, the Court rejects each of the preceding arguments of the Trustee. In its § 547(c)(1) analysis below, the Court shall accept, but only for the sake of argument and such analysis by the Court, that Fox Drug and Fox Corp. can legally be combined as the Trustee wishes such that they constituted but one entity—for such analysis, the Court shall refer to such Debtors as "the Combined Debtor."

### (i) *Did the Combined Debtor receive any new value?*

■ The Court finds curious an argument that, because that which the Combined Debtor received in return for the transfer of the Security Interests was worth less than the value of such security interests, the Combined Debtor did not receive any new value in exchange therefor. Section 547(c)(1) does not require, as a condition to its applicability, that a trans-

feree have given equal value in return for a transfer; instead, § 547(c)(1) operates to shield from preference avoidance transfers *to the extent* that new value is given. Therefore, if the Combined Debtor received new value of $377 million, then it, of course, received new value to such extent and, provided that the remainder of § 547(c)(1) can be satisfied, the transfer of the Security Interests may not, as a matter of law, be avoided as preferential to such extent.

### (ii) *What the Combined Debtor received even if all of the June 19, 1996 Transactions can be integrated.*

■ If the Combined Debtor received new value equal to $575 million in return for the transfer of the Security Interests, then (a) it received precisely equal value for such transfer given that, and as the Trustee contends, the Security Interests are properly valued at $575 million—the Court is constrained to conclude that the Security Interests are so properly valued given that the Loan Proceeds totalled such amount and the Defendants were oversecured at all times, *see infra* p. 568, and (b) § 547(c)(1) operates, consequently, to entirely immunize the transfer of the Security Interests from preference avoidance provided that the remainder of § 547(c)(1) can be satisfied. The parties do not dispute, at least genuinely, that, if the June 19, 1996 Transactions are not integrated, then the Combined Debtor received, in return for the transfer of the Security Interests, new value equal to $575 million in the form of receipt of the Loan Proceeds.[4] However, the parties dispute the

---

4. The Court does not understand the Trustee to argue that the Combined Debtor did not receive new value with respect to the $4 million which GECC and the Non–GECC Lenders retained from the Loan Proceeds to pay

fees, expenses, and closing costs related to the financing which Fox Drug obtained via the Credit Agreement and the Receivables Purchase Agreement. In any event, the Court holds that a reasonable jury could only con-

amount of such new value received by the Combined Debtor in the event of such integration. The Court concludes presently, and as a matter of law, that, even if all of the June 19, 1996 Transactions can be integrated such that they constituted but one large transaction, the Combined Debtor nevertheless received, in return for the transfer of the Security Interests, new value equal to $575 million. Because the Court so concludes, and in light of the legal holdings at the beginning of the instant paragraph herein, § 547(c)(1) operates to entirely immunize the transfer of the Security Interests from preference avoidance provided that the remainder of § 547(c)(1) can be satisfied.

The Court understands the Trustee to argue that (a) such new value, in the event of such integration, must be calculated by subtracting the $198 million Dividend from $575 million, which calculation yields new value equal to $377 million, (b) such calculation necessarily follows if the June 19, 1996 Transactions are integrated, (c) the propriety of such integration is disputed, (d) the integration issue is foreclosed from resolution via the instant summary judgment motions by the law of the case, and (e) the "new value" issue thus may not be ruled upon at this time. However, and for the reasons that follow, the Court rejects such rationale of the Trustee.

As an initial matter, the Trustee is certainly correct that, if such integration can occur, then the Combined Debtor received $198 million less in value via an integrated transaction than the value which it thereby transferred out. However, and unfortunately for the Trustee, the preceding point does not dictate that new value received by the Combined Debtor in an integrated transaction is calculated by subtracting from $575 million such $198 million so as to yield the figure of $377 million. In fact, and as the Court holds, a reasonable jury could only find, and thus a genuine dispute does not exist, that, via an integrated transaction, the Combined Debtor received $575 million in new value by virtue of the full satisfaction of its indebtedness in a similar amount to the Citicorp Lenders and the Noteholders. The Court holds that a reasonable jury could only so find because, and as the Trustee concedes or must concede, the evidence is indisputable that (a) such full satisfaction of debt occurred on June 19, 1996, (b) the Credit Agreement and the Receivables Purchase Agreement required, as a condition to the advance of the Loan Proceeds, that the Loan Proceeds be utilized by the Combined Debtor concurrently to pay off the Citicorp Lenders and the Noteholders, (c) none of the Loan Proceeds, in fact, were formally included in the Dividend, (d) the Combined Debtor, in fact, did not use any of its funds other than the Loan Proceeds to pay off the Citicorp Lenders and the Noteholders, and (e) the Loan Proceeds, in fact, were thus utilized to pay off the Citicorp Lenders and the Noteholders. Indeed, the only way that a reasonable jury could find that new value should be calculated by subtracting the $198 million Dividend from $575 million is if $198 million of the Loan Proceeds were sent out to Avatex via the Dividend and the Combined Debtor used some of its funds other than the Loan Proceeds, such as the assets that

---

clude that the Combined Debtor received new value to the extent of such $4 million given that, as the Court holds below, a reasonable jury could also only conclude that the Combined Debtor received the full benefit, and thus received new value to the extent, of the remaining $571 million of the Loan Proceeds.

For the sake of convenience with respect to the instant opinion, the Court shall henceforth refer to all of the Loan Proceeds as having been used to satisfy $575 million in indebtedness to the Citicorp Lenders and the Noteholders even though such indebtedness actually totalled only $571 million.

were actually dividended to Avatex, to pay off the Citicorp Lenders and the Noteholders; unfortunately for the Trustee, and as set forth in the preceding sentence, a reasonable jury could not so find, and notwithstanding that the dividended assets may have been cash equivalents that were reduced to cash ultimately by Avatex. Therefore, if all of the June 19, 1996 Transactions can be integrated, then the Combined Debtor necessarily transferred out $773 million in property as a result thereof, which holding is also consistent with that which the Court holds that a reasonable jury could only find in the case of integration. The Court holds that a reasonable jury could only so find because (a) the parties agree that the Security Interests are properly valued at $575 million, (b) the parties agree that the Dividend for $198 million was effected, and (c) $575 million plus $198 million equals $773 million. Because the Court holds that a reasonable jury could only find, and thus that a genuine dispute does not exist, that, by virtue of an integrated transaction, the Combined Debtor received $575 million in value and transferred out property equal to $773 million, it is (a) not true, as the Trustee contends, that a new value calculation of $377 million necessarily follows in the event of integration, (b) actually the case that new value must be found to equal $575 million even in the event of integration, (c) thus neither here nor there— ie., it is irrelevant—with respect to the issue of "new value" whether all of the June 19, 1996 Transactions should be integrated given that, absent integration, the Combined Debtor also received $575 million in new value, and (d) irrelevant as well whether such integration issue is subject to a genuine dispute.[5]

Furthermore, and as the Court has already ruled above, since the Court can rule on the "new value" issue irrespective of the outcome of the aforesaid integration issue, application of the law of the case doctrine will not prevent the Court from ruling on the "new value" issue even if application of such doctrine might prevent a present ruling with respect to such integration issue. *See supra* p. 559. Because no other impediment stands in the way of a present ruling by the Court as to the issue of "new value," the Court shall now hold that, even in the event of integration, no basis exists, either in law or in fact, for the Court to conclude other than that the Combined Debtor received, in return for the transfer of the Security Interests, new value equal to $575 million.

### (iii) *Did the Combined Debtor receive the substitution of one obligation for another obligation?*

■ As the Court understands it, the Trustee argues that the Combined Debtor, in return for the transfer of the Security Interests, merely received the substitution

---

5. The Court notes that it matters not, for purposes of the Defendants' § 547(c)(1) defense, that, by virtue of an integrated transaction, the Combined Debtor transferred out property equal to $773 million in contrast to the $575 million in value that the Combined Debtor received in return because the Trustee has not even alleged, let alone introduced evidence into the record, that the outgoing transfer of $198 million that comprises the difference between $773 million and $575 million, which transfer was the Dividend, constituted an avoidable preferential transfer to the Citicorp Lenders and the Noteholders under § 547(b). *See* Trustee's Complaint ¶¶ 120–129. Of course, since the Court grants summary judgment at this time in favor of the Defendants with respect to the entirety of the Trustee's preference claim, the Trustee, even if he so desired, is foreclosed from any future attempt to amend his preference claim so as to allege that the Dividend transfer as well was preferential with respect to the Citicorp Lenders and the Noteholders. *See supra* p. 560 (holdings of decisions in *Adams*, *Eddy*, and *DRR, L.L.C.*).

of one obligation for an existing obligation because, after the June 19, 1996 Transactions, the Combined Debtor, instead of owing $575 million to the Citicorp Lenders and the Noteholders, simply owed the same amount to GECC and the Non–GECC Lenders. However, and unfortunately for the Trustee, caselaw makes clear that a debtor receives money and, thus, "new value" within the meaning of §§ 547(a)(2) and 547(c)(1) when an obligation of such debtor to one creditor or group of creditors is satisfied by another creditor who, in return for such satisfaction, receives a transfer of property from such debtor. *See In re Bellanca Aircraft Corp.,* 850 F.2d 1275, 1279–1281 (8th Cir. 1988); *In re EDC, Inc.,* 930 F.2d 1275, 1282 (7th Cir.1991); *In re Ross,* 1997 WL 331830 at *5 (Bankr.E.D.Pa.1997); *In re Strom,* 46 B.R. 144, 149 (Bankr.E.D.N.C. 1985); *In re Amarex, Inc.,* 88 B.R. 362, 365 (W.D.Okla.1988). The Court holds that such caselaw is apposite to the issue of such "new value" regardless of whether the satisfying creditor directly pays off other creditors of a debtor or, instead, transfers money to such debtor, which debtor then acts simply as a conduit and immediately passes such money on to such other creditors in extinguishment of their claims. Therefore, and as a matter of law, the Combined Debtor received money and, thus, "new value" within the meaning of §§ 547(a)(2) and 547(c)(1) in return for the transfer of the Security Interests because GECC and the Non–GECC Lenders satisfied indebtedness owed by the Combined Debtor to the Citicorp Lenders and the Noteholders, such satisfaction occurring either directly or indirectly by the passing of funds through the Combined Debtor.

The Court also holds that the substitution of obligations, at least within the meaning of § 547(a)(2), contemplates two obligations both of which involve, at a minimum, precisely (a) the same obligee, and (b) the same essential terms, *see In re Spada,* 903 F.2d 971, 975–976 (3rd Cir. 1990) ("new value" within the meaning of § 547(a)(2) is extended when, and to the extent that, the terms of an existing obligation are significantly modified, which means that a significant change in the essential terms of an obligation constitutes more than the substitution of obligations). Unfortunately for the Trustee, the obligees under the Credit Agreement and the Receivables Purchase Agreement—ie., GECC and the Non–GECC Lenders—are not the same as the obligees under the Citicorp Debt and the Senior Notes—ie., the Citicorp Lenders and the Noteholders. Consequently, the Court must hold, as a matter of law, that, even though, as part of the June 19, 1996 Transactions, the Combined Debtor extinguished one group of obligations and incurred another group of obligations, such latter group of obligations does not constitute, within the meaning of § 547(a)(2), a substitution for the former group of obligations. Because what the Combined Debtor received in return for its transfer of the Security Interests was, as a matter of law, much more than the substitution of one obligation for an existing obligation, the Combined Debtor accordingly received new value within the meaning of § 547(a)(2) and, thus, § 547(c)(1), which new value, as set forth above, equals $575 million.

**(iv)** *What is the relevant intent when applying § 547(c)(1)(A)?*

██ The Court questions whether, as the Trustee argues, the relevant intent to be ascertained when applying § 547(c)(1)(A) to the instant matter is that of the Citicorp Lenders and the Noteholders rather than GECC and the Non–GECC Lenders. The Court encounters such uncertainty because the plain language of § 547(c)(1)(A) can be construed

easily—in fact, just as easily as the construction which the Trustee advances—such that the relevant intent with respect to the instant matter is that of GECC and the Non–GECC Lenders rather than the Citicorp Lenders and the Noteholders. However, the Court shall accept *arguendo* that the relevant intent to be so ascertained is that of the Citicorp Lenders and the Noteholders.

Accepting as much, the Court finds, contrary to the pleas of the Trustee, that the record is not devoid of evidence that the Citicorp Lenders and the Noteholders intended for the June 19, 1996 transfers between the Defendants and the Combined Debtor to be made as part of a contemporaneous exchange. In fact, the evidence on the record is such that the Court finds itself constrained to hold that a reasonable jury could only return a verdict in favor of GECC and the Non–GECC Lenders with respect to such fact or, stated differently, that a reasonable jury could only find that the Citicorp Lenders and the Noteholders intended for such transfers to be made as part of a contemporaneous exchange. The Court so holds because it concludes, in turn, that, based upon the record, a reasonable jury could only find that (a) the Citicorp Lenders and the Noteholders had a desire and, thus, an intent as well, for the Combined Debtor to obtain alternative financing from someone such as, for instance, the Defendants, *see supra* p. 554, (b) the Citicorp Lenders and the Noteholders did not wish, indeed forbade, the Combined Debtor to obtain any such financing and/or to transfer liens on its property in the course of such financing unless the Combined Debtor first paid off the Citicorp Lenders and the Noteholders, *see supra* p. 554, (c) the Combined Debtor could not possibly have paid off the Citicorp Lenders and the Noteholders unless and until the Combined Debtor received funds in the amount of the Loan Proceeds,

(d) the Defendants or any other lender would not have lent funds equal to the Loan Proceeds unless and until they received the transfer of the Security Interests from the Combined Debtor, (e) the Citicorp Lenders and the Noteholders were aware that, in order for their claims against the Combined Debtor to be extinguished prior to, or simultaneous with, the Combined Debtor's acquisition of alternative financing, such extinguishment of claims, such acquisition of alternative financing, and such transfer of the Security Interests all had to necessarily occur contemporaneously, and (f) the Citicorp Lenders and the Noteholders thus intended for the transfer of the Security Interests to be made as part of a contemporaneous exchange for the alternative financing (ie., new value) which the Defendants extended to the Combined Debtor. Because the Court holds as it does, a genuine dispute does not exist as to whether the Citicorp Lenders and the Noteholders intended for the June 19, 1996 transfers between the Defendants and the Combined Debtor to be made as part of a contemporaneous exchange.

### (v) *Summary.*

In light of the foregoing, the Court finds to be free from a genuine factual dispute that the requisite elements of § 547(c)(1) are present, namely that the June 19, 1996 transfer of the Security Interests from the Combined Debtor to the Defendants was intended by not only the Defendants and the Combined Debtor but also by the Citicorp Lenders and the Noteholders to be made as part of a contemporaneous exchange for new value given to the Combined Debtor in the amount of $575 million, which contemporaneous exchange actually occurred. Since the preceding requisite elements under § 547(c)(1) are present, and since, by vir-

tue of the presence of such requisite elements, GECC and the Non–GECC Lenders are entitled to judgment as a matter of law in their favor under § 547(c)(1) and, thus, with respect to the entirety of the Trustee's preference claim as well, the Court, solely on the basis of § 547(c)(1), can and shall grant the summary judgment motions of GECC and the Non–GECC Lenders as the same pertain to the Trustee's preference claim (ie., the Trustee's Count 9).

### D. *"Inventory and Receivables" Exception to the Preference Rule under § 547(c)(5).*

■ 11 U.S.C. § 547(c)(5) provides that:

> [t]he trustee may not avoid under ... section [547(b)] a transfer—
>
> (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—
>
> (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or
>
> (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or
>
> (B) the date on which new value was first given under the security agreement creating such security interest.

11 U.S.C.A. § 547(c)(5) (West 1993). By virtue of § 547(c)(5), "[t]he claim of a hold-er of a perfected security interest in inventory [and/]or receivables will not be avoidable as a preference unless and 'to the extent [that] he improves his [secured (ie., lien)] position during the 90 day period before bankruptcy.'" 5 *Collier on Bankruptcy,* ¶ 547.04[5] at 547–68 (Bender 2002).

The Trustee concedes that the Security Interests which Fox Drug transferred to GECC and the Non–GECC Lenders were, for the most part if not entirely, in inventory and receivables. A transfer of security interests in such property is precisely the type of transfer that is covered by § 547(c)(5).

■ The Trustee also asserts in his pleadings filed in the instant adversary proceeding that GECC and the Non–GECC Lenders, by virtue of the Security Interests, were fully secured (ie., oversecured) at all times with respect to amounts that were advanced to Fox Drug under the Credit Agreement and the Receivables Purchase Agreement. *See supra* p. 552. Such assertion, if true, means, as a matter of law, that GECC and the Non–GECC Lenders could not possibly have improved their secured (ie., lien) position between the date upon which they received the Security Interests—ie., June 19, 1996—and the commencement date of the instant bankruptcy cases—ie., August 27, 1996. The preceding conclusion follows because, "[i]f a creditor was originally oversecured, any fluctuation in the value of the collateral is irrelevant" for purposes of § 547(c)(5). 5 *Collier on Bankruptcy,* ¶ 547.04[5] at 547–69 ("In determining the amount of the preference, fluctuations between the value of the collateral and the secured indebtedness during the preference period *are only relevant to the extent an undersecured creditor's security interest increases*"). The Court holds that, be-

cause the Trustee's assertion as to such oversecurity is contained within the Trustee's pleadings filed in the instant adversary proceeding, such assertion constitutes a binding and conclusive judicial admission by the Trustee as to such oversecurity. *See* 2 John W. Strong, *McCormick on Evidence* §§ 254 & 257 (5th ed.1999) (effective pleadings in a case constitute binding and conclusive judicial admissions within such case but only nonbinding, nonconclusive evidentiary admissions within other litigation); Barry Russell, *Bankruptcy Evidence Manual* § 801.22 (2002 ed.2001), at 884; *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3rd Cir.1972) (citing *State Farm Mutual Automobile Insurance Co. v. Worthington,* 405 F.2d 683, 686 (8th Cir.1968)). Because the Trustee makes such binding and conclusive judicial admission, the Court necessarily must conclude, and without even the presentation of proof, *see* Strong, *supra* p. 39, at §§ 254 & 257; Russell, *supra* p. 39, § 801.22 at 814, that the secured position of GECC and the Non–GECC Lenders did not improve during the period from June 19, 1996, to August 27, 1996. That the secured position of GECC and the Non–GECC Lenders did not improve during such period is significant because, if § 547(c)(5) is otherwise shown to be applicable, then, as a matter of law, no part of the transfer of the Security Interests in inventory and receivables may be avoided. The Court can also conclude as it does with respect to the "improvement in secured position" issue irrespective of whether the Trustee's assertion regarding the same constitutes a binding and conclusive judicial admission because (a) the Trustee possesses the burden of proof on the issue of such improvement notwithstanding that the Defendants generally possess the burden of proof with respect to issues under § 547(c), *see In re American Ambulance Service, Inc.,* 46 B.R. 658, 661 (Bankr.S.D.Cal.1985) ("The burden of proof as to the extent of any improvement in the Bank's position as of the filing date would again shift back to the Trustee"), (b) the Trustee has failed to present any evidence that the secured position of GECC and the Non–GECC Lenders improved during the period between June 19, 1996, and August 27, 1996, and (c) the lack of any evidence supporting a nonmovant's claim with respect to a particular fact is sufficient, by itself, for a court to find that a genuine dispute does not exist with respect to such fact if such nonmovant bears the burden of proof with respect to such factual issue, *see supra* p. 555.

■ Notwithstanding the preceding points, the Trustee argues that § 547(c)(5) is inapplicable to the instant matter because the Defendants first acquired the Security Interests during the 90–day preference period that preceded August 27, 1996. The Trustee, in support of such position, argues, as a matter of law, that § 547(c)(5) only applies (a) if a creditor had a lien on inventory and/or receivables prior to the beginning of the 90–day preference period, and (b) to the extent that such creditor's lien position did not improve during such 90–day period. Unfortunately for the Trustee, the plain language of § 547(c)(5)(B) explicitly provides that such preference exception applies even if a creditor does not first obtain his inventory/receivables lien until at some point during the 90–day preference period; indeed, § 547(c)(5)(B) mandates that, if an inventory/receivables lien is obtained during the preference period, then improvement in a creditor's secured position is measured from the date of such acquisition to the point of a bankruptcy petition filing. Therefore, the Court holds, as a matter of law, that a creditor need not have had a lien on inventory and/or receivables prior to the beginning of the 90–day preference

period in order for § 547(c)(5) to apply. The Court finds additional support for its holding in *American Ambulance Service*, 46 B.R. at 660–661, and in 5 *Collier on Bankruptcy*, ¶ 547.04[5] at 547–69 n. 63, and finds that such authorities, when coupled with the plain language of § 547(c)(5)(B), are much more persuasive than the two case authorities—ie., *In re Phillips*, 24 B.R. 712, 715 (Bankr.E.D.Cal. 1982), and *In re McLean Industries, Inc.*, 132 B.R. 247, 264 (Bankr.S.D.N.Y.1991)—upon which the Trustee relies for his contrary position, which authorities, the Court points out, appear to ignore the plain language of § 547(c)(5)(B). Consequently, the Defendants may avail themselves of the § 547(c)(5) defense in the instant matter notwithstanding that they only first obtained the Security Interests during the 90–day preference period that preceded August 27, 1996.

In light of the foregoing, the Court finds to be free from a genuine factual dispute that the requisite elements of § 547(c)(5) are present, namely that (a) the June 19, 1996 transfer of the Security Interests from Fox Drug to the Defendants created perfected security interests in inventory and receivables, and (b) the Defendants' secured position did not improve during the preference period from the date upon which the Defendants first acquired the Security Interests. Because the preceding requisite elements under § 547(c)(5) are present, and since, by virtue of the presence of such requisite elements, GECC and the Non–GECC Lenders are entitled to judgment as a matter of law in their favor under § 547(c)(5) and, thus, with respect to the entirety of the Trustee's preference claim as well, the application of § 547(c)(5) to the instant matter provides an alternative basis by itself for the Court's grant of the summary judgment motions of GECC and the Non–GECC Lenders as the same pertain to the Trustee's preference claim (ie., the Trustee's Count 9).

## IV. The Trustee's Counts 1, 2, 5 & 8— Fraudulent Conveyance Claims.

The Trustee, in his first two counts, pleads claims for actual and constructive fraudulent conveyance under, respectively, §§ 548(a)(1)(A) and 548(a)(1)(B). 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B) provide that:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C.A. § 548(a)(1) (West 2002).

The Trustee, in his Count 5, pleads a claim for actual fraudulent con-

veyance under § 276 of the New York Debtor & Creditor Law (hereafter the "NYDCL"). Such section provides, much like § 548(a)(1)(A) of the Bankruptcy Code, that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276 (McKinney 2002). The Trustee, in his Count 8, pleads a claim for constructive fraudulent conveyance under NYDCL §§ 273–275. Such sections are essentially identical to 11 U.S.C. § 548(a)(1)(B) except that conveyances are determined to be constructively fraudulent under the NYDCL if a debtor does not receive "fair consideration" rather than, as under the Bankruptcy Code, "reasonably equivalent value." *See* N.Y. Debt. & Cred. Law §§ 273–275 (McKinney 2002). Section 272 of the NYDCL provides that:

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272 (McKinney 2002). The Court concludes, and does not understand the parties to dispute in any event, that the phrases "fair equivalent therefor" and "not disproportionately

small" under the NYDCL are to be construed such that they are identical to "reasonably equivalent value" under § 548(a)(1)(B) of the Bankruptcy Code. *See In re Churchill Mortgage Investment Corp.*, 256 B.R. 664, 677 (Bankr.S.D.N.Y. 2000). Therefore, the NYDCL constructive fraudulent conveyance provisions significantly differ from 11 U.S.C. § 548(a)(1)(B) only in that the former require, in contrast to the latter, that, before a transfer can be deemed not to have been constructively fraudulent, relatively equal value must not only have been given but such value must also have been given in good faith; thus, if relatively equal value is given but not in good faith, then a transfer is constructively fraudulent under the NYDCL even though it is not under 11 U.S.C. § 548(a)(1)(B).

The Court understands the Trustee to assert with respect to each of his fraudulent conveyance claims that (a) the June 19, 1996 Transactions—including, *inter alia*, the Dividend to Avatex—must be integrated such that they constituted but one large transaction, and (b) the Debtors—in particular, Fox Drug and Fox Corp.—legally must be combined such that they constituted but one entity. By virtue of such integration and combination of the Debtors, the Trustee asserts, in each of his fraudulent conveyance claims, that one fraudulent transfer occurred, which transfer amounted to $773 million, *see supra* p. 564 (the Court holds that a reasonable jury could only find, and thus that a genuine dispute does not exist, that, by virtue of an integrated transaction, the Combined Debtor transferred out property equal to $773 million).[6] Such integration absent a combination of the Debtors yields, the

6. The Trustee, in his Count 9, fails to allege that the Dividend transfer was preferential with respect to the Citicorp Lenders and the Noteholders. In contrast thereto, the Trustee alleges consistently throughout the first eight of his counts that the Dividend constituted part of a fraudulent conveyance by the combined Debtors.

Trustee asserts by way of each of his fraudulent conveyance claims, one fraudulent transfer, which transfer amounted to $583 million—ie., the value of the Security Interests transferred by Fox Drug, or $575 million, *see supra* p. 562, plus the value of the PharMor securities that were dividended by Fox Drug to Avatex, or $8 million, *see supra* p. 553. However, absent such integration, the only transfer that can be considered to be fraudulent and that involved the Defendants is the $575 million transfer of the Security Interests because (a) the transfer of the Dividend, absent integration, cannot be considered to be part of the same transfer of property one of the transferees of which are the Defendants, and (b) the Security Interests are the only property that was transferred to the Defendants by Fox Drug or the combined Debtors.

The Defendants argue that, for several reasons, they are entitled to the entry of summary judgment in their favor with respect to each of the Trustee's fraudulent conveyance claims.

First, the Defendants dispute the Trustee's allegation that Fox Drug or, if relevant, the combined Debtors possessed the actual intent to hinder, delay, or defraud as called for in 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276. The Court understands the Defendants to contend as well that the Trustee has failed thus far to produce sufficient record evidence to demonstrate that a genuine factual dispute exists regarding whether Fox Drug or the combined Debtors possessed such actual intent to hinder, delay, or defraud. If the Defendants are correct that such a genuine factual dispute does not exist, then they are entitled to summary judgment with respect to both of the Trustee's actual fraudulent conveyance claims.

Second, the Defendants contend that Fox Drug or, if relevant, the combined Debtors received reasonably equivalent value and a fair equivalent in return for that which such entities transferred out. Furthermore, the Defendants maintain that a genuine factual dispute does not exist regarding whether Fox Drug or the combined Debtors received such reasonably equivalent value and such a fair equivalent. If the Defendants are correct that such a genuine factual dispute does not exist, then they are entitled to summary judgment with respect to the Trustee's Bankruptcy Code constructive fraudulent conveyance claim and, provided that a genuine factual dispute does not exist that the Defendants acted in good faith within the meaning of NYDCL § 272, the Trustee's NYDCL constructive fraudulent conveyance claim as well.

Third, the Defendants assert that (a) they acted in good faith within the meaning of NYDCL § 272, and (b) a genuine factual dispute does not exist as to such good faith on their part. If the Defendants are correct that such a genuine factual dispute does not exist, and if they are also correct in their assertion, as set forth in the preceding paragraph, that a genuine dispute also does not exist that Fox Drug or the combined Debtors received a fair equivalent in return for that which such entities transferred out, then the Defendants are entitled to summary judgment with respect to the Trustee's NYDCL constructive fraudulent conveyance claim.

Fourth, the Defendants contend that, because they acted in good faith and gave value to either Fox Drug or the combined Debtors in the amount of $575 million, their receipt of the Security Interests is, pursuant to 11 U.S.C. § 548(c) and NYDCL § 278(2), shielded from avoidance via any of the Trustee's fraudulent conveyance claims, and even if open issues abound with respect to the Trustee's *prima facie* case regarding each such claim.

Furthermore, the Defendants maintain that a genuine factual dispute does not exist that they gave such value and in good faith to either Fox Drug or the combined Debtors. If the Defendants are correct that such a genuine factual dispute does not exist, then they are, indeed, entitled to the entry of summary judgment in their favor with respect to each of the Trustee's fraudulent conveyance claims, and even if open issues abound with respect to the Trustee's *prima facie* case regarding each such claim. With respect to the last point, the Court holds as it does because (a) the maximum which the Trustee can recover from the Defendants via his fraudulent conveyance claims is set forth under § 550(a)(1), to wit the property that was transferred to the Defendants or, if the Court allows, the value of such property, *see* 11 U.S.C.A. § 550(a)(1) (West 1993), (b) the Security Interests are the only property that was transferred to GECC and the Non–GECC Lenders, (c) the value of the Security Interests equalled $575 million, *see supra* p. 562, (d) the most that the Trustee could thus recover from the Defendants is the Security Interests or, if the Court allows, $575 million, (e) 11 U.S.C. § 548(c) and NYDCL § 278(2) permit a transferee to retain property received from a debtor to the extent that such transferee gave value in good faith, and notwithstanding whether such transfer is otherwise avoidable as a fraudulent conveyance, *see* 11 U.S.C.A. § 548(c) (West 1993); N.Y. Debt. & Cred. Law § 278(2) (McKinney 2002); *infra* pp. 580–82 (analysis that leads the Court to the conclusion that 11 U.S.C. § 548(c) and NYDCL § 278(2) should be construed such that they are identical), (f) the Defendants, if they gave $575 million in good faith, thus may retain the Security Interests in their entirety, which property, as set forth in part (d) of this sentence, is the only property that the Trustee may recover from the Defendants, and (g) if the Trustee is not entitled to recover any part of the Security Interests from the Defendants, then the Court also shall not permit the Trustee to recover any part of their value pursuant to § 550(a)(1).

For the reasons set forth below, the Court shall deny the Defendants' summary judgment motions with respect to each of the Trustee's four fraudulent conveyance claims.

### A. *Law of the Case and Summary Judgment Standard.*

The Court shall dispense with the parties' disagreement as to whether an application of the law of the case doctrine precludes the Court from entertaining the Defendants' present summary judgment motions as they pertain to the Trustee's fraudulent conveyance claims because, as is explained more fully below, the Defendants are not presently entitled to summary judgment with respect to such claims regardless of the outcome of such law of the case disagreement.

The Trustee bears the burden of proof on all of the issues pertaining to his *prima facie* case with respect to each of his fraudulent conveyance claims while the Defendants bear such burden regarding whether, for purposes of 11 U.S.C. § 548(c) and NYDCL § 278(2), they gave $575 million in good faith. *See 5 Collier on Bankruptcy*, ¶ 548.10 at 548–80. Consequently, GECC and the Non–GECC Lenders, as summary judgment movants, can presently demonstrate the lack of a genuine material factual dispute with respect to any pertinent fact, save for whether they gave $575 million in good faith, merely by pointing out to the Court that the Trustee has failed to present evidentiary matter with respect to such factual issue. *See supra* p. 555. Furthermore—

and with respect to all pertinent facts including whether the Defendants gave $575 million in good faith—a genuine factual dispute does not exist, and the Trustee thus cannot withstand summary judgment on the basis that a genuine factual dispute exists, if the evidence on the record is such that a reasonable jury could only return a verdict in favor of GECC and the Non–GECC Lenders with respect to such fact.

**B.** ***Whether Fox Drug or the combined Debtors actually possessed the intent to hinder, delay, or defraud?***

■ Addressing the first of the Defendants' grounds for summary judgment, the Court concludes, and for the same reasons that were set forth on page 3, paragraph 6 of its November 12, 1998 Judgment and Order, that sufficient record evidence presently exists to create a genuine factual dispute as to whether Fox Drug or, if relevant, the combined Debtors possessed the requisite evil intent called for under 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276. Because such a factual dispute remains, the Court cannot, on the basis of the Defendants' first ground, grant summary judgment to the Defendants with respect to either of the Trustee's actual fraudulent conveyance claims.

**C.** ***Whether Fox Drug or the combined Debtors received reasonably equivalent value and a fair equivalent?***

■ Addressing next the second of the Defendants' grounds for summary judgment, the Court concludes that such ground cannot form the basis for a present grant of summary judgment in the Defendants' favor vis-a-vis either of the Trustee's constructive fraudulent conveyance claims. The Court concludes as it does because (a) the issue of whether Fox Drug or the combined Debtors received reasonably equivalent value and a fair equivalent turns largely on whether (i) all of the June 19, 1996 Transactions should be integrated, and (ii) the Debtors and, in particular, Fox Drug and Fox Corp. can be combined such that they constituted but one entity, and (b) the Court concludes, in turn, and for the reasons set forth separately below with respect to each of the latter issues, that such issues cannot be resolved at the present time.

**(i)** ***The Integration Issue.***

The parties dispute whether all of the June 19, 1996 Transactions should be integrated. The pertinent law regarding the integrated transaction doctrine or, as it is often referred to, the step transaction doctrine has been stated as follows:

> The step transaction doctrine is a judicially-created doctrine that has traditionally been applied in the tax context. Nevertheless, courts often apply the step transaction concept in other fields as well, including disputes involving issues of . . . fraudulent conveyances.
>
> "Under this doctrine, interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction." Therefore, by "linking together all interdependent steps with legal or business significance, rather than taking them in isolation," the result may be based "on a realistic view of the entire transaction."
>
> Since the inception of the step transaction doctrine, "courts have developed three tests for determining when the step transaction doctrine should operate to collapse the individual steps of a complex transaction into a single integrated transaction for tax purposes; (1) end result, (2) interdependence, and (3) binding commitment."

The end result test combines "into a single transaction separate events which appear to be component parts of something undertaken to reach a particular result." If a series of closely related steps in a transaction are merely the means to reach a particular result, the court will not separate those steps, but instead treat them as a single transaction.

Under the interdependence test, the court disregards the effects of individual transactional steps if "it is unlikely that any one step would have been undertaken except in contemplation of the other integrating acts." ... [This test focuses on] "whether under a reasonably objective view the steps were so interdependent that the legal relations created by one of the transactions seem fruitless without completion of the series."

... [With respect to the binding commitment test,] a series of transactions may be integrated if, at the time the first step is entered into, there is a binding legal commitment to undertake the later step or steps.

*In re Big v. Holding Corp.*, 267 B.R. 71, 92–93 (Bankr.D.Del.2001) (citations omitted). With respect to fraudulent conveyance law and, in particular, constructive fraudulent conveyance law,

[t]he paradigmatic scheme ... [for which the integration doctrine is utilized is as follows]: one transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the consideration, while the debtor retains nothing.

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2nd Cir.1995). Integration of the two transfers reveals that the debtor in a para-digmatic scheme does not receive reasonably equivalent value or, under the NYDCL, a fair equivalent in return for the transfer of such debtor's property to the first transferee. Of course, utilization of the integration doctrine within the context of a paradigmatic scheme adds nothing to a constructive fraudulent conveyance analysis if the debtor receives reasonably equivalent value or a fair equivalent from the second transferee. *See Id.*

GECC and the Non–GECC Lenders rely on the preceding rationale from *HBE Leasing* and argue that integration would add nothing to the Trustee's constructive fraudulent conveyance claims because, even if the transfers of the Security Interests and the Loan Proceeds by Fox Drug or the combined Debtors are integrated, Fox Drug or the combined Debtors nevertheless received reasonably equivalent value or a fair equivalent in return therefor in the form of the satisfaction of their indebtedness to the Citicorp Lenders and the Noteholders. The Court finds much merit in the preceding argument by the Defendants provided that the aforesaid transfers of the Security Interests and the Loan Proceeds can be divorced from the additional transfer by Fox Drug or the combined Debtors of the Dividend to Avatex because, in that event, the Court is faced with the paradigmatic scheme referred to in *HBE Leasing*, but with the distinction that Fox Drug or the combined Debtors received equal value in return from the second transferee (ie., the Citicorp Lenders and the Noteholders). However, if the Dividend transfer must be integrated with the other two transfers by Fox Drug or the combined Debtors, then the Court is faced with a scheme that is unlike the paradigmatic scheme referred to in *HBE Leasing* given that such para-digmatic scheme does not involve a third discrete transfer of property by a debtor.

The Court has little doubt that the *HBE Leasing* court, or for that matter any other court, would conclude that integration of three transfers by a debtor such as are presently before this Court adds much to a constructive fraudulent conveyance analysis, provided that such integration is otherwise called for by application of the three tests set forth in *Big v. Holding*, if, after such integration, it is determined that such debtor receives substantially less than it collectively transfers out via the three transfers. The Court holds as it does because the key to the *HBE Leasing* court's conclusion that integration adds nothing to a constructive fraudulent conveyance analysis in a two-transfer (ie., paradigmatic) scheme wherein a debtor receives sufficiently equal value from a second transferee is that court's observation that "the entire transaction, even if 'collapsed,' ... does not adversely affect the debtor's ability to meet its overall obligations." *Id.* Therefore, and because after integration Fox Drug received $8 million less in value and the combined Debtors received $198 million less in value than the value of that which they transferred out collectively to the Defendants, the Citicorp Lenders and the Noteholders, and Avatex, if integration of all of the June 19, 1996 Transactions is otherwise appropriate, then such integration also has much to offer with respect to the Trustee's two constructive fraudulent conveyance claims.

The Court concludes that the issue of integration is essentially an ultimate question of fact—that is, a mixed question of fact and law. The Court can only dispose of such an issue if the facts subsidiary to such ultimate fact have been completely established. The Court concludes that the Trustee has already presented much evidence that is relevant to such subsidiary facts and, thus, is at least somewhat supportive of a conclusion/finding that the Dividend transfer should be integrated with the other transfers that were effected on June 19, 1996, by Fox Drug or, if the Court so finds, by the combined Debtors, to wit:

(1) The Credit Agreement contains language which expressly conditioned the Defendants' obligation thereunder to advance $300 million in Loan Proceeds to Fox Drug upon the concurrent consummation of the Dividend;

(2) The Dividend was effected on June 19, 1996, contemporaneous with (a) the advances of both the aforesaid $300 million in Loan Proceeds and the other $275 million in Loan Proceeds that GECC advanced pursuant to the Receivables Purchase Agreement, and (b) the satisfaction in full of the Citicorp Debt and the Senior Notes;

(3) Evidence tending to show that Avatex sought to effect the Dividend prior to June 19, 1996, which evidence tends to show, *inter alia*, that all of the June 19, 1996 Transactions were part of a plan from the outset;

(4) The agreements for the Citicorp Debt and the Senior Notes contained covenants that effectively precluded the effectuation of the Dividend, which evidence tends to establish that Avatex sought alternative financing only so as to eliminate such obstacle to effectuation of the Dividend; and

(5) All but approximately $201.5 million of the Citicorp Debt and Senior Notes was unsecured debt whereas all of the $575 million in funding obtained from GECC and the Non–GECC Lenders was secured, which evidence tends to establish that there was no reason other than the effectuation of the Dividend for Fox Drug or the combined Debtors to enter into such lending relationship with the Defendants.

Because such evidence in favor of the Trustee's position exists on the record, the Court certainly cannot presently say that integration of all of the June 19, 1996 transactions is inappropriate and unwarranted. However, because the Court finds the record evidence to be such that at least some of the subsidiary facts have yet to be fully established, the Court actually cannot presently say one way or the other whether such integration will ultimately occur. As a result, the Court shall not resolve at the present time whether all of the June 19, 1996 Transactions should be integrated into one large transaction. Alternatively, if one wishes to view the issue of integration as one entirely of fact, then the Court concludes that the evidence is presently such that a reasonable jury could find that, and thus a genuine dispute exists as to whether, all of the June 19, 1996 Transactions were transactions that warrant integration into one large transaction. Therefore, the issue of integration shall remain open for the time being.

### (ii) *The Issue of Combining the Debtors.*

The parties dispute whether the Debtors can be combined such that they constituted but one entity. The Trustee, as an initial matter, argues that the Debtors and, in particular, Fox Drug and Fox Corp. can be combined irrespective of whether such entities' corporate veils can be pierced. Whether the Debtors can be combined on a ground other than that their corporate veils should be pierced is decidedly a legal question, which question the Court presently decides outright in the negative. Therefore, unless the corporate veils of the Debtors can be pierced and the Debtors, thus, can be viewed as alter egos of one another, the separate corporate forms of each Debtor must be respected for all purposes in the instant adversary proceeding.

Whether the corporate veils of the Debtors and, in particular, Fox Drug and Fox Corp. can be pierced is essentially an ultimate question of fact. The Court frankly is skeptical as to whether the Trustee has thus far presented any evidence that could lead the Court to find that such corporate veils should be pierced. However, the Court is not comfortable at this stage in saying that all of the subsidiary facts have been established that bear on the issue of veil piercing, particularly given that, to the Court's knowledge, whether corporate veils should be pierced is resolved by way of what can properly be characterized as somewhat of an open-ended decision-making process—such process is open-ended if for no other reason than that there does not exist a finite list of factors to consider, and no one factor is supposed to predominate, when resolving such issue. Therefore, the Court shall not presently resolve whether the corporate veils of the Debtors should be pierced, which means that the issue of whether the Debtors should be combined for purposes of the instant adversary proceeding shall remain open for the time being. Also contributing to the Court's decision to delay ruling on the veil piercing issue is its observation that neither of the parties have yet even addressed (a) which state's law applies to the veil piercing issue—ie., should it be that of Delaware, New York, or Texas, (b) whether significant differences exist among such states whose law might apply to the veil piercing issue vis-a-vis such issue, and (c) what precisely is the standard to be utilized when resolving such issue.

Although the Court shall not presently resolve whether the corporate veils of the Debtors should be pierced, the Court nevertheless presently holds that all of the assertions that were made by the Trustee, both orally and in his papers, before Judge Sleet of the U.S. District Court, District of

Delaware, within the context of a separate adversary proceeding that involved the Debtors, which assertions respected both subsidiary facts relevant to, as well as, the ultimate factual issue of whether the Debtors' corporate veils should be pierced, shall constitute admissions, albeit nonbinding, nonconclusive evidentiary admissions, within the context of the instant adversary proceeding. *See* Strong, *supra* p. 39, at §§ 254 & 257 (things that constitute judicial admissions within particular litigation constitute only nonbinding, nonconclusive evidentiary admissions within other separate pieces of litigation); Russell, *supra* p. 39, at § 801.22 (same); *In re United Mine Workers of America Employee Benefit Plans Litigation,* 782 F.Supp. 658, 674 (D.D.C.1992) (same); *Universal American Barge Corp. v. J–Chem, Inc.,* 946 F.2d 1131, 1142 (5th Cir.1991) (same); *State Farm Mutual Automobile Insurance Co. v. Worthington,* 405 F.2d 683, 686 (8th Cir.1968) (same). The Court understands the Trustee, in his letter to the Court dated September 5, 2002, to argue, *inter alia,* that (a) his aforesaid prior assertions are neither binding nor conclusive in the instant adversary proceeding with respect to that to which they pertain, and (b) the content of such prior assertions is not inconsistent with the Trustee's position taken in the instant adversary proceeding that the Debtors' corporate veils should be pierced. The Court, by virtue of its ruling set forth at the outset of this paragraph, necessarily agrees with the Trustee that such prior assertions are neither binding nor conclusive in the instant adversary proceeding. However, and notwithstanding the Trustee's contrary pleas, the Court finds that such assertions are entirely inconsistent with that which the Trustee is attempting to prove in the instant matter—indeed, such prior assertions were made by the Trustee for the purpose of attempting to stave off an attempt to pierce the corporate veils of the Debtors by an opponent in another piece of litigation. Because of such inconsistency, and given that such assertions are admissible as evidence in the instant adversary proceeding, the Court finds that such assertions will constitute significant evidence against the Trustee's present interests within the instant matter. Finally, the Court reserves ruling in the future, if necessary, on whether any of the Trustee's prior assertions made before Judge Sleet will have judicial estoppel effect with respect to the instant matter.

Because the Court views the issue as to whether the Debtors should be combined as a threshold issue, the Court shall arrange the upcoming trial regarding the instant adversary proceeding so that such issue is addressed and resolved prior to the remainder of that which is presented at such trial.

**D. Whether the Defendants acted in good faith within the meaning of NYDCL § 272?**

Because, as set forth in the immediately preceding part C. herein, the Court cannot, via a summary judgment motion, presently dispose of the issue of whether Fox Drug or the combined Debtors received a fair equivalent, the Court cannot presently grant summary judgment in the Defendants' favor with respect to the Trustee's NYDCL constructive fraudulent conveyance claim even if the Defendants are correct, as they assert, that a genuine dispute does not exist that they acted in good faith within the meaning of NYDCL § 272. However, the Court holds in any event, for the reasons set forth below, that sufficient record evidence presently exists to create a genuine factual dispute as to whether the Defendants acted in such good faith.

The Defendants (a) cite to the decisions in *HBE Leasing* and *Atlanta Shipping*

*Corp., Inc. v. Chemical Bank,* 818 F.2d 240 (2nd Cir.1987), as supportive of their position that they acted in good faith under NYDCL § 272 when they lent the $575 million in Loan Proceeds, and (b) argue, in particular, that the Second Circuit held in *HBE Leasing* that appellant Clemence Frank acted in good faith under NYDCL § 272 when she lent $100,000 to the debtor therein and received a $100,000 mortgage in return [7] (i) "because her loan was used by the debtor for legitimate corporate purposes," and (ii) regardless of Clemence Frank's knowledge regarding the affairs of such debtor, *see* Non–GECC Lenders' Reply Br. dat. June 10, 2002, at p. 10. Unfortunately for the Defendants, the Court understands the Second Circuit to hold in *HBE Leasing* and *Atlanta Shipping* that, *inter alia,* a transferee acts in bad faith under NYDCL § 272 if (a) money lent by such transferee to a debtor is subsequently transferred by such debtor with actual fraudulent intent, and (b) such transferee had actual or constructive knowledge of

such debtor's fraudulent intent or scheme. *See HBE Leasing,* 48 F.3d at 635–636 (citing to *Atlanta Shipping* decision in support of such holding).[8] Applying such statement of the law to the facts in *HBE Leasing,* the Second Circuit actually held therein that a $60,000 portion of the $100,000 mortgage received by Clemence Frank was avoidable as a constructive fraudulent conveyance under the NYDCL if the debtor therein transferred $60,000 of the lent proceeds with actual fraudulent intent because, if such fraudulent scheme by such debtor existed, then Clemence Frank did not give such $60,000 in good faith. *See HBE Leasing,* 48 F.3d at 640. The Second Circuit held that Clemence Frank lacked good faith with respect to such $60,000 if a fraudulent scheme so existed because her knowledge of the affairs of such debtor provided her with constructive knowledge regarding any such fraudulent scheme. *See Id.* at 637 & 640 n. 13.[9] Consistent with the decisions in

7. Clemence Frank actually made two separate loans of funds in the amounts, respectively, of $250,000 and $100,000 to, and received back two separate mortgages in respective identical amounts from, the debtor in *HBE Leasing. See HBE Leasing,* 48 F.3d at 630. The Defendants, when arguing in the instant matter that the Second Circuit in *HBE Leasing* held that Clemence Frank gave value in good faith on the basis that the funds which she lent to the debtor therein were used for legitimate corporate purposes, necessarily can only so argue with respect to the $100,000 loan because the Second Circuit held, quite clearly, that such debtor ultimately received neither the benefit of the $250,000 loan nor, consequently, anything in exchange for its transfer of the $250,000 mortgage to Clemence Frank. *See Id.* at 637.

8. The Second Circuit in *HBE Leasing* held that " 'good faith' [under NYDCL § 272] is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing,* 48 F.3d at 636. This Court notes that the Second Circuit, by holding as it does, appears to

either do away with or overlook one requirement respecting "good faith" under NYDCL § 272 that is often imposed by courts, namely that such "good faith must be present with both the transferor and the transferee." *United States v. McCombs,* 928 F.Supp. 261, 274 (W.D.N.Y.1995) (citing several cases). This Court is aware of at least one court that literally imposes such requirement when addressing such "good faith" issue. *See Id.* at 263, 274 & 275 n. 12 (applying "good faith" standard to both debtor transferor—Nancy Ellison—and daughter transferees—Kelly and Mary McCombs). This Court need not, for purposes of disposing of the instant summary judgment motions vis-a-vis the NYDCL § 272 "good faith" issue, resolve whether such standard can only be met if it is also satisfied by Fox Drug or the combined Debtors because, as set forth in the text below, a genuine factual dispute exists as to whether the Defendants themselves acted in good faith.

9. The Second Circuit in *HBE Leasing* held that the remaining $40,000 portion of the $100,000 mortgage received by Clemence

*HBE Leasing* and *Atlanta Shipping*, the Court holds that the Defendants will be found to have acted in good faith under NYDCL § 272 only if it turns out to be the case in the instant matter that (a) the transfer of the Security Interests, the incurrence of indebtedness by Fox Drug or the combined Debtors to the Defendants, the transfer of the Loan Proceeds to the Citicorp Lenders and the Noteholders so as to satisfy indebtedness owed to the same, and the Dividend transfer did not each constitute a part of an overall fraudulent scheme, as is alleged by the Trustee, to strip assets out of either Fox Drug or the combined Debtors, or (b) the Defendants lacked knowledge, both actual and constructive, of such overall fraudulent scheme if such scheme is found to have existed. Stated somewhat differently, if the Trustee can prove the existence of a fraudulent scheme such as that which he alleges, and provided that he can also demonstrate that the Defendants possessed knowledge, either actual or constructive, of such scheme, then he shall (a) succeed in establishing that the Defendants failed to act in good faith under NYDCL § 272, and (b) prevail on his constructive fraudulent conveyance claim under the NYDCL, and regardless of whether Fox Drug or the combined Debtors received a fair equivalent.

The Court concludes that, based upon the record evidence, a reasonable jury could find that (a) a fraudulent scheme such as that which the Trustee alleges in fact existed, (b) the Defendants possessed knowledge, either actual or constructive, of such scheme, and (c) the Defendants thus did not act in good faith within the meaning of NYDCL § 272. Consequently, a genuine dispute remains as to whether the Defendants acted in such good faith.

**E.** *Whether the Defendants are entitled to judgment at this time with respect to all of the Trustee's fraudulent conveyance claims by virtue of application of the defenses set forth in 11 U.S.C. § 548(c) and NYDCL § 278(2)?*

Addressing finally the last of the grounds advanced by the Defendants for summary judgment, the Court concludes that sufficient record evidence presently exists to create a genuine factual dispute as to whether the Defendants gave $575 million in value in good faith. Because such a factual dispute remains, the Court cannot presently say, as a matter of law, that the Defendants shall prevail with respect to their defenses predicated upon 11 U.S.C. § 548(c) and NYDCL § 278(2). Accordingly, the Court cannot, on the basis of the Defendants' last ground, grant summary judgment to the Defendants with

Frank was not avoidable as a constructive fraudulent conveyance under the NYDCL. *See HBE Leasing*, 48 F.3d at 637. The Second Circuit so held because no allegation had even been made that the transfer by the debtor therein of the remaining $40,000 of the lent proceeds was improper. *See Id.* The Second Circuit did not so hold, however, and not even partially, on the ground, as the Defendants now contend, that it mattered not, for purposes of "good faith," whether Clemence Frank possessed knowledge of such debtor's other corporate affairs. The requirement of "good faith" with respect to such $40,000 was only satisfied because, absent the exis-

tence of any fraudulent scheme with respect to such amount, Clemence Frank could not possibly have had any knowledge of such a scheme. Indeed, if such a fraudulent scheme had been pled with respect to such $40,000, then this Court would expect that the Second Circuit would have held that Clemence Frank acted in bad faith with respect to such amount in the event that such fraudulent scheme were proven precisely because of her knowledge of such debtor's other corporate affairs, given that, as the Second Circuit held, such knowledge would have provided her with constructive knowledge of such fraudulent scheme.

respect to any of the Trustee's four fraudulent conveyance claims.

The Court holds as it does even though the Court can presently dispose of the issue as to the amount of value that the Defendants gave. The Court can presently resolve the issue as to such amount of value because (a) the Court has already held that, even if integration occurs, a reasonable jury could only find, and thus a genuine dispute does not exist, that, via an integrated transaction, the combined Debtors received $575 million in value by virtue of the satisfaction of their indebtedness in the same amount to the Citicorp Lenders and the Noteholders, *see supra* pp. 563-64, (b) the Trustee does not dispute, at least genuinely, that, if integration does not occur, then the combined Debtors also received $575 million in value by virtue of receipt of the Loan Proceeds, *see supra* p. 562, and (c) a reasonable jury could only find, and thus a genuine dispute does not exist that, the Defendants are the source of such $575 million in value, be it by way of indirect satisfaction of the Citicorp Debt and the Senior Notes in the case of integration or by way of transfer of the Loan Proceeds to the combined Debtors if integration does not occur. Therefore, the Defendants gave $575 million in return for their receipt of the Security Interests. However, and for the reasons set forth below, a genuine dispute remains as to whether GECC and the Non–GECC Lenders gave the $575 million in good faith.

As an initial matter, the Court holds that "good faith" for purposes of 11 U.S.C. § 548(c) is identical to that which a transferee must show under NYDCL § 278(2), which "good faith" or identical showing, when combined with the fact, and to the extent, that such transferee gives value, serves to except a transfer from avoidance as a fraudulent conveyance under either the Bankruptcy Code or the

NYDCL, and notwithstanding whether such transfer is otherwise avoidable as an actual or constructive fraudulent conveyance. The rationale for such holding by the Court follows. NYDCL § 278 provides, in pertinent part, that:

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase . . .

   a. Have the conveyance set aside or obligation annulled . . .

.   .   .   .   .

2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

N.Y. Debt. & Cred. Law § 278 (McKinney 2002). The Court finds that the language "actual fraudulent intent" under NYDCL § 278(2) has been construed such that it is satisfied if a "transferee participated *or acquiesced* in the transferor's fraudulent design." 13 Romualdo P. Eclavea, *Carmody–Wait 2d New York Practice with Forms* §§ 85–29 & 85–30 (2002) (emphasis added). Participation and/or acquiescence in a transferor's fraudulent design, in turn, has been found to exist if, *inter alia,* a transferee had knowledge of a transferor's fraudulent intent. *See Id.; In re Deitz' Estate,* 196 Misc. 893, 93 N.Y.S.2d 597, 600 (N.Y.Sur.Ct.1949); *Berlenbach v. Bischoff,* 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930). Accordingly, the language "without actual fraudulent intent" under NYDCL § 278(2) must mean without participation in or knowledge of a transferor's fraudulent scheme, which holding comports with the Third Circuit's conclusion in *United States v. Ta-*

bor *Court Realty Corp.,* 803 F.2d 1288 (3rd Cir.1986), that, when construing a Pennsylvania state statutory provision that contained the same "without actual fraudulent intent" language found in NYDCL § 278(2), such language should really mean without knowledge of a transferor's fraudulent intent, see *Tabor Court,* 803 F.2d at 1298–1299 (holding, and citing to *The Uniform Fraudulent Conveyance Act in Pennsylvania,* 5 U.Pitt.L.Rev. 161, 186 (1939), for the proposition, that (i) the Pennsylvania state provision in question should be interpreted consistent with 11 U.S.C. § 548(c)'s good faith standard, (ii) such good faith is not present if a transferee has knowledge of a transferor's fraudulent intent, and (iii) "without actual fraudulent intent" should thus mean without knowledge of a transferor's fraudulent intent). Furthermore, "good faith" under 11 U.S.C. § 548(c) is not satisfied unless a transferee has "no intent to, or knowledge of the fact that the activities in question will[,] hinder, delay, or defraud others," 5 *Collier on Bankruptcy,* ¶ 548.07[2][a] at 548–59 to 62 ("Awareness of the fraudulent purpose of a transaction is obviously inconsistent with good faith"). Because it appears to the Court that the other factors sometimes mentioned as meriting consideration when conducting a "good faith" analysis, *see Id.,*[10] will or will not be met depending upon whether a transferee possessed either fraudulent intent or knowledge regarding a transferor's fraudulent intent, the Court holds, as a matter of law, that (a) such factors are subsumed within a determination as to the presence of such intent or knowledge, and (b) a determination regarding "good faith" under 11 U.S.C. § 548(c) can thus be made by simply ascertaining whether a transferee was free from either fraudulent intent itself or knowledge as to the fraudulent intent of its transferor. Having defined "good faith" under 11 U.S.C. § 548(c) as such, the Court observes that such definition is consistent with, if not identical to, the meaning that must be accorded the language "without actual fraudulent intent" under NYDCL § 278(2). In light of the preceding observation, and because " 'the fraudulent conveyance provisions of the [Bankruptcy] Code are modeled on the UFCA[, upon which the NYDCL is modeled], and [since] uniform interpretation of the two statutes is essential to promote commerce nationally,' " *Tabor Court,* 803 F.2d at 1299 (quoting from *Cohen v. Sutherland,* 257 F.2d 737, 741 (2nd Cir.1958)); *see also HBE Leasing,* 48 F.3d at 634 n. 8 (same); *Churchill Mortgage,* 256 B.R. at 677 (same), the Court holds that "good faith" under 11 U.S.C. § 548(c) and "without actual fraudulent intent" under NYDCL § 278(2) are to be construed such that they are identical. Because "good faith" under 11 U.S.C. § 548(c) is to be construed such that it is identical to the language "without actual fraudulent intent" under NYDCL § 278(2), the Court shall, for the sake of convenience with respect to the instant opinion, henceforth refer at times to the necessary showing under NYDCL § 278(2) as also one of "good faith."

■ The Court also holds that "good faith" under NYDCL § 272 is indistinguishable from "good faith" under 11 U.S.C. § 548(c) and, thus, "without actual fraudulent intent" under NYDCL § 278(2). The Court holds as much because (a) "good faith" under NYDCL § 272 is, as

---

**10.** In addition to freedom from fraudulent intent or knowledge as to the fraudulent intent of a transferor, "good faith" under 11 U.S.C. § 548(c) also requires (a) "an arm's length transaction," (b) "an honest belief in the propriety of the activities in question," and (c) "no intent to take unconscionable advantage of others." 5 *Collier on Bankruptcy,* ¶ 548.07[2][a] at 548–59 to 60.

set forth above, taken to mean "without either actual or constructive knowledge of any fraudulent scheme," *HBE Leasing,* 48 F.3d at 636 (citing *Atlanta Shipping,* 818 F.2d at 249), (b) "good faith" under NYDCL § 272 obviously must also include within its definition abstention from participation in a fraudulent scheme, and (c) such definition of such good faith is consistent with, if not identical to, the meanings that must be accorded "good faith" under 11 U.S.C. § 548(c) and "without actual fraudulent intent" under NYDCL § 278(2). Because the Court holds that "good faith" under NYDCL § 272 is identical to "good faith" under 11 U.S.C. § 548(c) and "without actual fraudulent intent" under NYDCL § 278(2), and since the Court has already determined that a genuine dispute remains as to whether the Defendants acted in good faith within the meaning of NYDCL § 272, the Court is constrained to also hold that a genuine dispute remains as to whether the Defendants acted (a) in good faith within the meaning of 11 U.S.C. § 548(c), and (b) without actual fraudulent intent under NYDCL § 278(2).

Finally, the Court notes that the burden of proof under 11 U.S.C. § 548(c) and NYDCL § 278(2) is placed in the instant matter upon GECC and the Non–GECC Lenders. As a consequence, even if it were the case that the Trustee had failed to produce record evidence that tends to prove that they acted in bad faith, the Defendants could not, on that basis alone, demonstrate the lack of a genuine dispute as to whether they acted in good faith. Instead, the Defendants, in order to demonstrate such lack of a genuine dispute, must, in any event, persuade the Court that record evidence is such that a reasonable jury could only find that the Defendants acted in good faith. Unfortunately for the Defendants, the Court, as set forth above, concludes that, based upon the record evidence, a fair amount of which, in

fact, has been introduced by the Trustee, a reasonable jury could find that (a) a fraudulent scheme such as that which the Trustee alleges in fact existed, (b) the Defendants possessed knowledge, either actual or constructive, of such scheme, and (c) the Defendants thus did not act in good faith. Consequently, a genuine dispute remains as to whether the Defendants acted in good faith, which means that the Court cannot presently say, as a matter of law, that the Defendants are entitled to summary judgment on their last ground, predicated as it is upon the application of 11 U.S.C. § 548(c) and NYDCL § 278(2).

## CONCLUSION

For all of the foregoing reasons, the Court (a) shall grant the summary judgment motions of GECC and the Non–GECC Lenders with respect to the entirety of the Trustee's preference claim (ie., the Trustee's Count 9), and (b) shall deny such summary judgment motions with respect to each of the Trustee's four fraudulent conveyance claims (ie., the Trustee's Counts 1, 2, 5, and 8). By virtue of the parties' oral stipulation at the August 15, 2002 hearing, the Court shall dismiss counts 3, 4, 6, and 7 of the Trustee's Complaint.

An appropriate order will be entered.

## ORDER OF COURT

**AND NOW,** this **19th day** of **November, 2002,** upon consideration of (a) the Trustee's Complaint, wherein the Trustee, *inter alia,* brings (i) eight fraudulent conveyance claims, two of which are brought pursuant to 11 U.S.C. § 548(a)(1) and the other six of which are brought pursuant to state law, and (ii) one preference claim brought pursuant to 11 U.S.C. § 547(b), (b) the summary judgment motions brought by the above-captioned defendants (hereafter "the

Defendants"), and (c) the various briefs and documentary material submitted by the parties in support of their respective positions; and subsequent to notice and a hearing on the summary judgment motions held on August 15, 2002; and for the reasons set forth in the accompanying Memorandum Opinion dated November 19, 2002, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

(a) the Defendants' summary judgment motions with respect to the entirety of the Trustee's preference claim (ie., the Trustee's Count 9) are **GRANTED,**

(b) the Defendants' summary judgment motions with respect to each of the Trustee's four fraudulent conveyance claims (ie., the Trustee's Counts 1, 2, 5, and 8) are **DENIED,** and

(c) counts 3, 4, 6, and 7 of the Trustee's Complaint are **DISMISSED** by virtue of the parties' oral stipulation at the August 15, 2002 hearing.